BOARD OF APPEALS OF MAYNARD v. HOUSING APPEALS
COMMITTEE IN THE DEPARTMENT OF COMMUNITY
AFFAIRS & others.[1]

Middlesex.    February 5, 1976. — April 5, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& WILKINS, JJ.

*Housing. Zoning,* Low and moderate income housing; Housing Ap-
peals Committee; Board of appeals: jurisdiction. *State Adminis-
trative Procedure Act. Wetlands. Words,* "Limited dividend organ-
ization."

Three of a statutory committee of five members properly acted on a
pertinent matter. [66]
A ruling by a trial judge that the procedure under·G. L. c. 30A of an
agency before rendering a final decision was proper was warranted
by his findings that a majority of its deciding officials heard or read
the evidence and that a "proposed decision" was received by the ad-
verse party, which had an "opportunity" to file objections and to
present arguments. [66]
The record in a suit in equity supported a finding by the Housing Ap-
peals Committee that an "organization" which applied to a board
of health for a comprehensive permit to construct low and moderate
income housing and which was eligible to receive a subsidy was a
"limited dividend organization" under G. L. c. 40B, § 20, and was
entitled to submit the application, although it did not become a duly
organized limited partnership until after its application had been
denied by the board. [67]
An order of the Housing Appeals Committee that a comprehensive
permit issue for the construction of low and moderate income hous-
ing subject to the condition that the development be constructed on
ten acres only of the tract and that the remaining six acres be
preserved for open space rendered inapplicable the ten-acre provi-
sion of G. L. c. 40B, § 20. [67-68]
Remedies provided by G. L. c. 131, § 40, as amended, for alleged error
in a ruling by the Housing Appeals Committee that the proposed
site of low and moderate income housing was not a "wetland" re-
quiring "Hatch Act" approval did not include action by the board
of appeals which denied a comprehensive permit for such housing or
by the committee. [68]

---

[1] Richard Brainerd & others, doing business as Woodcrest Village
Associates.

The Housing Appeals Committee, in connection with its order that a comprehensive permit issue for the construction of low and moderate income housing on condition that the developer construct at his expense an extension from an existing public sewer, could dispense with a vote of the town meeting respecting the extension as a requirement not consistent with local needs. [68-69]

BILL IN EQUITY filed in the Superior Court on May 21, 1974.

The suit was heard by *Zarrow, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*George P. Luker,* Town Counsel, for the Board of Appeals of Maynard.

*Robert T. Harrington (Erik Lund* with him) for Richard Brainerd & others.

*Francis X. Bellotti,* Attorney General, *& Danielle E. deBenedictis,* Special Assistant Attorney General, for the Housing Appeals Committee in the Department of Community Affairs, submitted a brief.

BRAUCHER, J.  Woodcrest Village Associates, formerly Maynard Development Associates (the developer), applied to the board of appeals of Maynard (board) for a comprehensive permit for the construction of low and moderate income housing, pursuant to G. L. c. 40B, §§ 20-23, inserted by St. 1969, c. 774, § 1, sometimes called the Anti-Snob Zoning Act. See Rodgers, Snob Zoning in Massachusetts, 1970 Ann. Surv. Mass. Law, at 487, 489-494. The board denied the permit, but the Housing Appeals Committee in the Department of Community Affairs (HAC) vacated the board's order and ordered the permit issued subject to stated conditions. The HAC decision was affirmed in the Superior Court, and we now affirm the Superior Court judgment.

The developer applied for the permit on July 25, 1972. The board denied it on November 2, 1972, in part on grounds later rejected in *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community*

*Affairs,* 363 Mass. 339 (1973). On the developer's appeal, HAC held hearings for twelve sessions resulting in about 2,000 pages of transcript. On February 13, 1974, HAC filed a memorandum of findings and rulings of thirty-five pages, and on April 22, 1974, HAC entered its decision. As amended, the board's petition for review under G. L. c. 30A, pursuant to G. L. c. 40B, § 22, alleged fifty-four errors, which the judge briefly summarized as six in his findings and rulings. Judgment affirming the HAC decision was entered January 16, 1975, and the board appealed. We ordered the case transferred to this court on our own motion. None of the eight points argued by the board has merit, and we deal with them briefly.

1. *Composition of HAC.* Under G. L. c. 23B, § 5A, HAC is to consist of five members, one a selectman. The selectman member resigned, the chairman ceased to function, and the present case was decided by three members. Three members could act. G. L. c. 4, § 6, Fifth. *Albano* v. *Selectmen of S. Hadley,* 341 Mass. 494, 496 (1960), and cases cited.

2. *Administrative Procedure Act.* Under G. L. c. 30A, § 11 (7), inserted by St. 1954, c. 681, § 1, "If a majority of the officials of the agency who are to render the final decision have neither heard nor read the evidence," there must be a "tentative or proposed decision" and "an opportunity ... to file objections and to present argument, either orally or in writing as the agency may order ...." The judge found that one member of HAC attended all the hearings, one attended some and read transcripts of the rest, and the third attended none and read selected portions of the transcripts, and that the board received a document tantamount to a proposed decision and was given an opportunity to file objections and present arguments. We uphold his ruling that the procedure was proper both on the ground that a majority of the deciding officials heard or read the evidence and on the ground that there was a "proposed decision" and a statutory "opportunity."

3. *Massachusetts Environmental Policy Act.* The HAC decision called for a comprehensive permit subject to ten

conditions, including the following: "1. The comprehensive permit shall not be implemented until the Housing Appeals Committee has fully complied with Mass. G. L. c. 30, §§ 61-62 and the Housing Appeals Committee shall retain authority to modify this decision based upon findings of forms or reports prepared in connection therewith, all in accordance with its Regulations Under the Massachusetts Environmental Policy Act, Section 5.1.A.1." The board sought review of the cited regulation, but a single justice of this court dismissed the board's petition for declaratory judgment, without prejudice to review in the present proceeding. The Superior Court judge noted the board's contention that HAC had failed to comply with §§ 61 and 62, but did not discuss it. The action taken complies with the cited regulation, and we are unable to follow the board's argument that the regulation is unauthorized.

4. *Eligibility of the developer.* The project comes within the definition of "low and moderate income housing" in G. L. c. 40B, § 20, only if the developer is a "limited dividend organization." The developer did not become a duly organized limited partnership until after its application had been denied by the board. HAC ruled that it was an "organization" when it made application to the board, and that under HAC Rules and Regulations § 1 (f) it was a "limited dividend organization" if it was eligible to receive a subsidy. We agree. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs*, 363 Mass. 339, 378-380 (1973).

5. *Site size.* Under the definition of "consistent with local needs" in G. L. c. 40B, § 20, as applied to Maynard, local requirements or regulations are consistent with local needs if "the application before the board would result in the commencement of construction of such [low or moderate income] housing on sites comprising more than ... ten acres ... in any one calendar year." In such cases only the board retains the power to override requirements and regulations in order to grant a comprehensive permit. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs*, 363 Mass. 339, 365-367

(1973). The tract here in issue exceeded sixteen acres, and HAC therefore ordered the comprehensive permit subject to the following condition: "2. The development will be constructed on ten (10) acres only and will preserve the remaining six (6) acres for open space." This condition rendered the quoted statutory language inapplicable.

6. *Wetland.* The board contends that a stream runs through the site, and that there should be compliance with G. L. c. 131, § 40, as amended, the "Hatch Act." HAC ruled that the site is not a "wetland" requiring Hatch Act approval. If that ruling is erroneous, § 40 provides remedies. Those remedies do not include action by the board or HAC. Cf. *Christoffels* v. *Alton Properties, Inc.* 362 Mass. 862 (1972); *Green* v. *Board of Appeals of Norwood,* 358 Mass. 253, 264 (1970).

7. *Findings and rulings.* HAC's memorandum of findings and rulings comprised thirty-five pages. The board submitted fifty-three requests for findings of fact and sixty-one requests for rulings. HAC stated that the disposition of all relevant requests was adequately indicated and that no useful purpose would be served by dealing with them again on a piecemeal basis. The board now asks us to review twenty-eight requests for findings, and forty-five requests for rulings, identified only by number. We decline. We need not pass on questions or issues not argued in the brief. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). So far as attacks are made on findings as to emergency access and crowding of schools, we uphold the judge's ruling that the findings and rulings of HAC were supported by substantial evidence, and that the decision was not arbitrary or capricious, did not constitute an abuse of discretion and was not contrary to law.

8. *Sewerage.* The site is 2,000 feet from an existing public sewer, and the developer agreed to construct an extension at its own expense and to post a bond to ensure performance. Performance of that agreement was made a condition of the permit. The board argues that extension of the sewer line requires a vote of the town meeting and that because of hostility to the project no such vote could be

obtained. We think the argument is frivolous. If the vote cannot be obtained, HAC can dispense with it as a requirement or regulation not consistent with local needs.

*Judgment affirmed.*