ALICE OLIVER & others[1] vs. TOWN OF MATTAPOISETT
& others[2]
(and a companion case[3]).

Plymouth.  October 7, 1983. — December 21, 1983.

Present: GRANT, BROWN, & KASS, JJ.

*Practice, Civil,* Taxable inhabitants' action. *Public Land. Municipal Corporations,* Real property.

This court suggested that a town's grant of an easement which had been executed, delivered, and recorded, could not be challenged by taxpayers in an action under G. L. c. 40, § 53, but left undisturbed the trial judge's finding that inasmuch as the town had undertaken future obligations the plaintiffs had standing under G. L. c. 40, § 53, to maintain the action. [287-288]

A simple majority vote of a town meeting was sufficient to authorize the selectmen to grant a nonexclusive easement in certain property of the town originally acquired by purchase from a railroad, followed by a confirmatory taking many years later for which the railroad received nothing, where restrictions in the easement specifically preserved the present and future uses which the town and others selected by it might wish to make. [288-290]

CIVIL ACTIONS commenced in the Superior Court Department on June 29 and July 6, 1981, respectively.

The cases were heard by *O'Neill,* J.

*Carlton A. Lees (Roxane Delano* with him) for Alice Oliver & others.

*Reginald H. Howe (Gregory M. Kennan* with him) for Daniel O. Mahoney & another, trustees.

*Donald J. Fleming,* Town Counsel, for the town of Mattapoisett & another, was present but did not argue.

[1] Nineteen other persons who identify themselves as taxpayers of Mattapoisett.

[2] Neilson Abeel and Daniel O. Mahoney, trustees of Goodspeed Island Trust A and Goodspeed Island Trust B.

[3] Alice Oliver *vs.* Planning Board of Mattapoisett & others.

KASS, J.   First, there is a problem of standing.   The plaintiffs, who challenge an easement already granted by the town, allege no interest other than as taxpayers.   Ten or more taxpayers of a town may, by an equitable action, ask a court to determine the lawfulness of expenditures or obligations about to be incurred.   G. L. c. 40, § 53.

So far as the easement in question is concerned, Mattapoisett's act is completed, and there is no future obligation.   The easement here has been executed, delivered, and recorded. More has been done, therefore, than was the case with the easement in *Lynch* v. *Cambridge,* 330 Mass. 308 (1953), in which the deed had not yet been executed and delivered when ten taxpayers brought an action.   What remained for Cambridge to do, however, was held not to be an obligation within the meaning of G. L. c. 40, § 53, because "the only obligation assumed by the city will be the obligation to recognize that it has granted an easement which . . . will cause it no present or future loss or detriment . . . the city is not required to raise, expend, or borrow any money."   *Id.* at 310-311.   There is no general jurisdiction to entertain a suit by taxpayers to restrain municipalities from performing wrongful acts.   *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 259 (1925).   It does nòt get the plaintiffs over these obstacles that they have cast their complaint as a request for a declaratory judgment.   *Gallo* v. *Division of Water Pollution Control,* 374 Mass. 278, 287 (1978).

The Superior Court judge, however, after taking note of *Lynch* v. *Cambridge,* made a conclusory finding "that sufficient obligations were incurred by the [t]own to justify a decision on the merits."   He may have been moved so to find because Mattapoisett, as part of its dealings with the trustees of the Goodspeed Island trusts, appeared to contemplate the construction of a cul-de-sac, although it is not clear that the town had committed itself on this score.   Anticipated conduct of a municipality does not support a § 53 action.   *Fuller* v. *Trustees of Deerfield Academy, supra,* at 260.   As we are to accept findings of fact unless clearly erroneous, Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), we leave

the judge's somewhat enigmatic finding of future obligations undisturbed, as well as the conclusion which followed, that the plaintiffs had standing under G. L. c. 40, § 53, to maintain their action.

On the merits, the question which the parties debate is whether a two-thirds vote of the inhabitants of the town was required to authorize the selectmen to grant the easement in question. The town voted by a simple majority (sixty-eight to fifty-eight). The easement granted permits the trustees of Goodspeed Island[4] to use the easement area, which connects Goodspeed Island to the mainland, "for all purposes for which public ways in the [t]own may . . . be used, including . . . access by foot or vehicle to and from Depot Street . . . and for installing utilities." Certain significant — in our view dispositive — reservations qualified the grant of easement. (1) The easement is nonexclusive and is to be exercised in common with the town and others whom the town may permit to use the area. (2) The town can maintain and operate a sanitary sewer force main and other utilities located on the easement area, and can obstruct the easement in the course of maintaining and reconstructing those facilities. (3) The town can erect a chain, gate or other barrier to limit vehicular use of the easement. (4) The town can lay out all or any portion of the easement area as a public way.[5]

Except as qualified by other statutes, a majority vote of a town is sufficient to grant an easement or convey any other interest in land. G. L. c. 40, § 3. *Harris* v. *Wayland,* 16 Mass. App. Ct. 583, 585-586 (1983). One such qualifying statute is G. L. c. 40, § 15, as amended through St. 1961, c. 117, which provides, in substance, that any land, easement or right of the city or town acquired by eminent domain may be conveyed or abandoned only by a two-thirds vote of

---

[4] There are Goodspeed Island Trusts A and B. They were created at the same time, were simultaneously recorded, and have the same trustees. Both are designated as grantees of the easement.

[5] There are other conditions and reservations respecting the easement which we do not detail.

the town,[6] and then only following notification of the select-
men[7] that the "land, easement or right, or part thereof, is
no longer required for public purposes." G. L. c. 40, § 15.
See *Muir* v. *Leominster*, 2 Mass. App. Ct. 587, 593-596
(1974).

The land in which the easement is located was purchased
for $4,000 in 1956 from the New York, New Haven and
Hartford Railroad, which had used it as a roadbed. In 1973,
the town made a confirmatory taking, perhaps to cleanse
the title, and paid the railroad nothing. There was not here
the exercise of coercive public power which causes the use of
eminent domain to be a solemn event and brings G. L. c. 40,
§ 15, into play. See *Muir* v. *Leominster, supra* at 595-596.
Cf. *Jacobson* v. *Parks & Recreation Commn. of Boston*, 345
Mass. 641, 643-644 (1963), in which an internal transfer of
land did not alter the character of the land in question as
land originally acquired by purchase, rather than by gift.

Moreover, we are of opinion that no interest was conveyed
within the meaning of § 15. That statute contemplates a
"considered determination" by public officials that an inter-
est in land is no longer needed for a public purpose. *Muir* v.
*Leominster*, 2 Mass. App. Ct. at 596. No such declaration
was either made or called for. The primary function of the
old railroad right of way, after the town had acquired it,
was to serve as a road providing access to a public beach
located beyond Goodspeed Island. That is, the former rail-
road way ran 750 feet from Depot Street in the town center
to the island, then 600 feet across the island, and to the
beach. The town has also installed a sewage pumping sta-
tion and a force main in portions of the right of way. None
of this use is in any way abandoned or disturbed. On the
contrary, those uses and others the town may wish to make
are specifically reserved in the text of the easement to the
trustees of the Goodspeed Island trusts. Some sort of dis-
continuance of public use, the precondition to invocation of

---

[6] Or, in the case of a city, the city council. See also G. L. c. 39, § 1.

[7] Or, in the case of a city, the city council.

G. L. c. 40, § 15, has not occurred, and the plaintiffs cannot seize on that statute to require a two-thirds vote.

Another statute which requires a two-thirds vote for land disposition is G. L. c. 40, § 15A, as appearing in St. 1954, c. 105, which deals with transfer of care, custody, management, and control of land from one municipal department to another. No inter-agency transfer has occurred. Section 15A, in a fashion similar to the other statute discussed, requires a determination by the municipal board or officer who has charge of the land in question that the "land is no longer needed for [its former] purpose." G. L. c. 40, § 15A. On the facts, there is no occasion in this case to apply the two-thirds requirement of § 15A.

The judgment below declared that a majority vote of the town meeting on April 8, 1980, and the subsequent grant of the easement to the trustees of the Goodspeed Island trusts on October 28, 1980, were valid. That judgment was correct.

*Judgments affirmed.*