439 Mass. 71 (2003)                                           71

Dennis Housing Corp. *v.* Zoning Board of Appeals of Dennis.

DENNIS HOUSING CORP. *VS.* ZONING BOARD OF APPEALS OF
DENNIS & another.[1]

Bristol. December 5, 2002. - March 31, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, SOSMAN, & CORDY, JJ.

*Zoning,* Comprehensive permit, Housing appeals committee, Low and moderate income housing. *Housing. Historic District Commission. Words,* "Local board."

Discussion of the background, governing structure, and organization of a legislatively created regional historic district. [73-76]

Statement of the purpose of G. L. c. 40B, § 21-23, the comprehensive permit act for the development of affordable housing. [76-78]

This court concluded that the town of Dennis historic district committee was a "local board" within the meaning of G. L. c. 40B, §§ 20-23, the comprehensive permit act, and that, consequently, a developer seeking to construct elderly low-to-moderate income housing within the geographic boundaries of the town's historic district did not need to file a separate application for a certificate of appropriateness with the town's historic district committee, and that any comprehensive permit issued by the town's zoning board of appeals would be inclusive of any certificate that would ordinarily have to be obtained from the town's historic district committee. [78-83]

CIVIL ACTION commenced in the Superior Court Department on August 4, 2000.

The case was heard by *Robert J. Kane,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*George X. Pucci* for the defendants.

*James P. Killoran* for the plaintiff.

*David S. Weiss & Jennifer M. DeTeso,* for Citizens' Housing and Planning Association, amicus curiae, submitted a brief.

SOSMAN, J. The defendants, members of the zoning board of

[1]Town of Dennis Old King's Highway historic district committee.

appeals of the town of Dennis (ZBA) and members of the town of Dennis Old King's Highway historic district committee (Dennis historic committee), appeal from the entry of summary judgment declaring that the Dennis historic committee is a "local board" within the purview of the comprehensive permit act, G. L. c. 40B, §§ 20-23. We transferred the case on our own motion, and now affirm the declaratory judgment.

1. *Background.* The plaintiff, Dennis Housing Corp. (developer), seeks to construct elderly low-to-moderate income housing in the town of Dennis. On May 9, 2000, the developer filed an application with the ZBA seeking a comprehensive permit pursuant to G. L. c. 40B, § 21, which allows the ZBA to rule on "a single application to build such housing in lieu of separate applications to the applicable local boards." The site for the proposed project is within the geographic boundaries of the Old King's Highway regional historic district (historic district), created by St. 1973, c. 470, as amended (Historic Act). Historic Act, § 2, as appearing in St. 1978, c. 436, § 1. No construction, alteration, demolition, or removal of structures located within the historic district may occur without a "certificate of appropriateness" as to the exterior architectural features issued by the requisite town historic district committee.[2] The developer took the position that its "single application" to the ZBA pursuant to G. L. c. 40B, § 21, and the ZBA's authority to grant a comprehensive permit based on that single application, obviated the need to obtain a certificate of appropriateness from the Dennis historic committee. The ZBA and the Dennis historic committee took the position that the committee was not a "[l]ocal [b]oard" as defined by G. L. c. 40B, § 20, and that a comprehensive permit issued under § 21 would therefore not allow the project to go forward without a separate application to and certificate of appropriateness from the Dennis historic committee.

The developer filed a complaint for declaratory judgment, seeking a declaration that the Dennis historic committee was a "local board" within the purview of G. L. c. 40B, that no separate application for a certificate of appropriateness needed to be filed with the Dennis historic committee, and that any

---

[2]Historic Act, § 6, as amended by St. 1975, c. 845, § 5.

comprehensive permit issued by the ZBA would be inclusive of any certificate that would ordinarily have to be obtained from the Dennis historic committee. On cross motions for summary judgment, the Superior Court judge ruled in favor of the developer, and entered judgment declaring that the Dennis historic committee was a "local board" subject to the provisions of G. L. c. 40B, §§ 20-23. The ZBA and the Dennis historic committee appealed.

2. *Organization of the historic district.* Because it is necessary to our analysis of whether the Dennis historic committee is a "local board" subject to G. L. c. 40B, §§ 20-23, we set forth the background, governing structure, and organization of the historic district in some detail. The Legislature's purpose in creating the historic district was "to promote the general welfare of the inhabitants of the applicable regional member towns so included through the promotion of the educational, cultural, economic, aesthetic and literary significance[,] through the preservation and protection of buildings, settings and places within the boundaries of the [historic district] and through the development and maintenance of appropriate settings and the exterior appearance of such buildings and places, so as to preserve and maintain such [historic district] as a contemporary landmark compatible with the historic, cultural, literary and aesthetic tradition of Barnstable county, as it existed in the early days of Cape Cod, and through the promotion of its heritage."[3] The historic district originally included portions of nine Cape Cod towns (Bourne, Sandwich, Barnstable, Yarmouth, Dennis, Harwich, Brewster, Orleans, and Eastham). Historic Act, § 2.[4]

The Legislature established a "town historic district committee" (town historic committee) for each of the member towns, with each town historic committee to be comprised of five members, including at least one architect. Historic Act, § 5. For most of the member towns (including Dennis), four out of the five town historic committee members must be residents of the

---

[3]Historic Act, § 1, as appearing in by St. 1982, c. 338, § 1.

[4]The Legislature subsequently authorized three towns to withdraw from the historic district if they so chose. See St. 1976, c. 273 (Eastham); St. 1977, c. 38 (Harwich); St. 1978, c. 436 (Bourne).

town.[5] All of the initial town historic committee members were appointed by each town's selectmen. *Id.* Following the expiration of their initial terms, the succeeding architect members are appointed by the selectmen, with the remaining town historic committee members elected at an annual meeting of the registered voters within the historic district, such elections to be conducted in accordance with "such rules and regulations as the selectmen may prescribe." *Id.* For two towns (including the town of Dennis), town historic committee members are now elected at the town's annual election.[6] A town historic committee may nominate, and the town's selectmen may then appoint, an alternate member, who must be a town resident, to serve as needed to establish a quorum.[7] Vacancies occurring prior to the expiration of a town historic committee member's term are also filled by selectmen's appointment, and the selectmen have the power to remove a town historic committee member for cause. Historic Act, § 5.

Within the historic district, no building or structure can be erected without a certificate of appropriateness issued by the town historic committee, and the building inspector may not issue a building permit unless the applicant submits the requisite certificate of appropriateness.[8] The building inspector has the power and duty to enforce the provisions of the Historic Act.[9] On submission of an application for a certificate of appropriateness, the town historic committee is to schedule a public hearing on the application, publish notice thereof in a "local newspaper," and notify all abutters to the project.[10] In ruling on an application, the town historic committee must determine whether the "size" and "features" of the proposed structure "will be appropriate for the purposes of this [Historic Act]." Historic Act, § 10. In making that determination, the town historic committee is to consider "the historical value and significance of the building or structure, the general design, ar-

---

[5]Historic Act, § 5, as amended through St. 1982, c. 338, § 4.

[6]Historic Act, § 5, as amended through St. 2000, c. 276, § 1, and St. 1994, c. 90, § 1.

[7]Historic Act, § 5, as amended by St. 1979, c. 631, § 3.

[8]Historic Act, § 6, as amended by St. 1975, c. 845, §§ 5, 8.

[9]Historic Act, § 12, as amended by St. 1975, c. 845, § 15.

[10]Historic Act, § 9, as appearing in St. 1975, c. 845, § 11.

rangement, texture, material and color of the features . . . and the relation of such factors to similar factors of buildings and structures in the immediate surroundings," along with the "settings" and "relative size of buildings and structures." *Id.*

The Legislature also established the Old King's Highway regional historic district commission (historic commission), which is comprised of the chairmen of each of the town historic committees.[11] Persons aggrieved by a town historic committee's grant or denial of a certificate of appropriateness may appeal to the historic commission.[12] The historic commission may reverse the town historic committee's decision if the committee "exceeded its authority or exercised poor judgment, [or] was arbitrary, capricious or erroneous in its action."[13] Persons aggrieved by the historic commission's decision may seek judicial review in the District Court having jurisdiction over that town.[14]

The historic commission promulgates rules and regulations for the administration of the historic district.[15] The historic commission has the power to designate portions of the historic district as "exempt areas," within which the requirement of a certificate of appropriateness is eliminated, if the historic commission determines that those areas "lack historical significance."[16] The historic commission may also designate whole "categories of exterior architectural features" as similarly exempt from review for appropriateness.[17] The expenses of managing the historic district are apportioned by the historic commission among the member towns, with each town's board of assessors including the amount in the following year's tax levy. Historic Act, § 14.

The effective date of the legislation creating the historic district was made contingent on a vote by the residents of the towns within the historic district. Historic Act, § 16. If a majority of those town voters voting in the 1974 State election voted

---

[11]Historic Act, § 4, as amended by St. 1978, c. 436, § 3.

[12]Historic Act, § 11, as appearing in St. 1975, c. 845, § 13.

[13]*Id.*

[14]*Id.*

[15]Historic Act, § 4, as amended by St. 1975, c. 845, § 4.

[16]Historic Act, § 7, as amended through St. 1977, c. 503, § 2.

[17]Historic Act, § 7, as amended by St. 1975, c. 845, § 9.

that the legislation should "be accepted," the legislation was to become effective and the historic district would be created. *Id.* Absent such majority vote, the legislation would not become effective, but the question would be placed on the ballot again in up to two subsequent elections. If still not accepted by a majority vote at any of those elections, the legislation would remain without effect, and the question of its acceptance could only be put back on the ballot by way of a petition signed by fifteen per cent of the registered voters in each of the nine towns. *Id.* The requisite majority vote was obtained, and the legislation was thereby accepted and effective, at the November 4, 1974, State election. In each of the subsequent enactments authorizing particular towns to withdraw from the historic district, the option to withdraw was to be placed on the ballot at the withdrawing town's annual election, with that withdrawal becoming effective only on receipt of a majority vote.[18]

3. *The comprehensive permit act.* Against this backdrop pertaining to the creation and functioning of town historic committees in the historic district, we must consider the comprehensive permit act, G. L. c. 40B, §§ 21-23. The comprehensive permit act was intended to remove various obstacles to the development of affordable housing, including regulatory requirements that had been utilized by local opponents as a means of thwarting such development in their towns. See *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, 436 Mass. 811, 814-815, 820-824 (2002); *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 347-355 (1973); Rodgers, Snob Zoning in Massachusetts, 1970 Ann. Survey of Mass. L. 487, 487-489. Among those regulatory obstacles was the need to obtain permits and approvals from multiple local agencies through separate application and review proceedings. "[T]he process of obtaining local approval is so protracted as to discourage all but the most determined and well-financed builders." *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 351, quoting Report of the Committee on Urban Affairs, 1969 House Doc. No. 5429.

To eliminate that particular impediment, G. L. c. 40B, § 21, provides that a qualified developer proposing to build low or

---

[18]Statute 1978, c. 436, § 5; St. 1977, c. 38, § 5; St. 1976, c. 273, § 5.

moderate income housing may submit to the zoning board of appeals "a single application to build such housing in lieu of separate applications to the applicable local boards." The zoning board is then to notify those "local boards" for their "recommendations" on the proposal; the zoning board may "request the appearance" of representatives of those "local boards" at the public hearing as may be "necessary or helpful" to the decision on the proposal; and the zoning board may "take into consideration the recommendations of the local boards" when making its decision. G. L. c. 40B, § 21. The zoning board then has "the same power to issue permits or approvals as any local board or official who would otherwise act with respect to such application," *id.*, and, in some circumstances, has the power to override requirements or restrictions that would normally be imposed by those local boards. See *Mahoney* v. *Board of Appeals of Winchester*, 366 Mass. 228, 232-233 (1974), appeal dismissed, 420 U.S. 903 (1975); *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 354-355, 364-365; G. L. c. 40B, §§ 20, 23. If the zoning board denies the application for comprehensive permit, or approves it only on conditions that make the project "uneconomic," the applicant may appeal to the housing appeals committee (created by G. L. c. 23B, § 5A), which also has the power to override local regulations and direct the issuance of a comprehensive permit. G. L. c. 40B, §§ 22-23. See *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, *supra* at 815-816; *Mahoney* v. *Board of Appeals of Winchester*, *supra*; *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 345-346, 354-355, 364-367.

The zoning board's proceedings on a comprehensive permit application are subject to stringent deadlines, with a public hearing to be held within thirty days of the receipt of the application, and the decision to be rendered within forty days of the close of the public hearing. G. L. c. 40B, § 21. Absent the applicant's agreement to extend those deadlines, the application will be deemed allowed if the zoning board fails to meet them. *Id.* See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 552 (1999); *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 782-783 (1987); *Milton Common*

*Assocs.* v. *Board of Appeals of Milton*, 14 Mass. App. Ct. 111, 116, 117 (1982). The apparent purpose behind these provisions is to consolidate what would otherwise be multiple, protracted proceedings before separate local agencies into a single, streamlined proceeding before the zoning board. "These are designed to expedite action on such applications where previously a builder might have suffered delays of months and even years in negotiating approvals from various boards." Rodgers, *supra* at 489. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 347; *Milton Common Assocs.* v. *Board of Appeals of Milton*, *supra* at 117.

4. *Is the Dennis historic committee a "local board" under the comprehensive permit act?* The issue now before us is whether the Dennis historic committee qualifies as a "local board" such that its customary power to determine whether a project's exterior features are "appropriate" for the historic district may instead be exercised by the ZBA as part of a comprehensive permit proceeding. For the following reasons, we conclude that it is such a "local board."

The "local boards" whose ordinary jurisdiction may be exercised by the zoning board under G. L. c. 40B, § 21, are defined as "any town or city board of survey, board of health, board of subdivision control appeals, planning board, building inspector or the officer or board having supervision of the construction of buildings or the power of enforcing municipal building laws, or city council or board of selectmen." G. L. c. 40B, § 20. The list of local agencies and officials that comprise the definition of "local board" is not intended to be a list of the precise names of such local agencies, but rather encompasses local agencies and officials performing comparable functions to the listed forms of "local board." Zoning boards have so treated that list in processing applications for comprehensive permits. See, e.g., *Quinn* v. *Zoning Bd. of Appeals of Dalton*, 18 Mass. App. Ct. 191, 193, 196-197 & n.12 (1984) (including police department, fire department, conservation commission, and water department among "local boards" entitled to receive notice of comprehensive permit application). The housing appeals committee similarly interprets the term "local board" to include all boards that "perform functions usu-

ally performed by locally created boards." 760 Code Mass. Regs. § 30.02 (2001).[19] Indeed, the defendants' brief concedes that a local commission not listed by name in § 20 could still qualify as a "local board" for purposes of comprehensive permit proceedings.

That we are to undertake a functional analysis — not a name matching exercise — with respect to the definition of "local board" is made explicit in the definition's treatment of the building inspector. The definition of "[l]ocal [b]oard" includes the "building inspector *or the officer or board having supervision of the construction of buildings or the power of enforcing municipal building laws*" (emphasis added). G. L. c. 40B, § 20. Within the operational structure of the historic district, the functions of the town historic committee are directly linked to those of the building inspector: the building inspector may not issue a building permit for construction in the historic district unless the applicant submits a certificate of appropriateness issued by the town historic committee, and it is the building inspector who enforces the prohibition against uncertified construction within the historic district.[20] See *Rudders* v. *Building Comm'r of Barnstable*, 51 Mass. App. Ct. 108, 112-113 (2001) (building commissioner functioned as "enforcement arm" of town historic committee in issuing stop work order against construction that deviated from that authorized by certificate of appropriateness). It would be anomalous to hold that the zoning board's powers in the comprehensive permit scheme include the powers held by the building inspector in enforcing local requirements, but not the powers of the local agency for which the building inspector functions as enforcer. Where a town historic committee exercises a degree of "supervision of the construction of buildings," requiring that the exterior features of such buildings be "appropriate" to the historic district, and where the building

[19]The defendants argue that the housing appeals committee has exceeded its authority by crafting its own definition of "local board" beyond the terms of the statutory definition. While we agree that the housing appeals committee has no authority to expand the reach of the comprehensive permit act to agencies not intended by the Legislature, its use of a functional approach to interpreting the statute's definition of "local board" is consistent with the approach we take today.

[20]Historic Act, §§ 6, 12, as amended by St. 1975, c. 845, §§ 8, 15.

inspector (expressly named in the definition of "local board") is the local official that operates to uphold and enforce the town historic committee's power of supervision, we are satisfied that a town historic committee comes within the definition of "local board." G. L. c. 40B, § 20.[21]

The defendants seek to evade this analysis by arguing that the town historic committee is not enforcing a mere local or "municipal" building law, id., but rather a State law as mandated by the Legislature. The defendants correctly note that the comprehensive permit scheme was designed to override local ordinances, bylaws, and regulations that impeded the development of affordable housing, not Statewide requirements set by the Legislature and State agencies. See *Board of Appeals of Maynard* v. *Housing Appeals Comm.*, 370 Mass. 64, 68 (1976) (comprehensive permit does not override wetlands protection scheme mandated by G. L. c. 131, § 40); *Board of Appeals of N. Andover* v. *Housing Appeals Comm.*, 4 Mass. App. Ct. 676, 679-680 (1976) (condition in comprehensive permit invalid where it purported to usurp procedures for resolving State building code disputes between builder and building inspector). However, the mere fact that the historic district was created by act of the Legislature does not operate to negate the overwhelmingly "local" nature of its implementation and operation. Town historic committee members (and thereby the town historic committee chairpersons that comprise the historic commission) are appointed by the town selectmen and elected by the towns' registered voters; they are removable for cause by the town selectmen; all members (except for the architect) must be residents of the town; and the expenses of the historic committee are paid entirely from local tax revenues. See *Attorney*

---

[21]Indeed, where the building inspector is explicitly identified as a "local board," the zoning board would have the power to override the building inspector's requirement that an applicant submit a certificate of appropriateness as a prerequisite to a building permit, thereby effectively overriding the requirement that an applicant obtain such a certificate from the town historic committee. Rather than allowing a zoning board to override this requirement through the building inspector's status as a "local board," surely a town historic committee would prefer to have the status of "local board" in its own right so that it may have notice and an opportunity to be heard on the merits of the comprehensive permit application before the zoning board. See G. L. c. 40B, § 21.

*Gen.* v. *Barnstable Comm. of the Old King's Highway Regional Historic Dist.*, 416 Mass. 1009, 1010 (1993) (town manager had authority to order town historic committee to withdraw appeal because its members were "town officer[s]" within meaning of town ordinance). While it is true that the Legislature set the general standards to be employed in assessing an application for a certificate of appropriateness, it is left to the locally elected and locally appointed historic commission and town historic committees to administer the historic district, exempt geographic areas and categories of features from its requirements, and decide applications for certificates of appropriateness. There is no State agency that has oversight of the workings of the historic commission or the town historic committees, either as to the determination of individual applications or as to the administration of the historic district. Rather, the historic commission and the town historic committees function independent of any State supervision, answerable only to the town voters and the town selectmen.

Contrary to the defendants' suggestion that the historic district was created by legislative command to preserve Cape Cod for the benefit of the State at large (thus giving the historic commission and the town historic committees the mandate to implement and enforce a "State" program), the Legislature's stated purpose was "to promote the general welfare *of the inhabitants of the applicable regional member towns*" (emphasis added).[22] The Legislature also left it to the voters within the proposed historic district member towns to decide whether even to create (or remain in) the historic district.[23] Thus, when the town historic committees act on applications for certificates of ap-

---

[22]Historic Act, § 1, as appearing in St. 1982, c. 338, § 1.

[23]Historic Act, § 16; St. 1978, c. 436, § 5; St. 1977, c. 38, § 5; St. 1976, c. 273, § 5. In that sense, the historic district is comparable to historic districts created by individual municipalities pursuant to G. L. c. 40C, which authorizes municipalities to create historic districts within their own borders if they so choose. See G. L. c. 40C, § 3. The defendants concede that historic district commissions established by individual cities and towns pursuant to G. L. c. 40C, § 3, are "local boards" within the meaning of G. L. c. 40B, § 20. The principal difference between those historic districts and the historic district at issue here is that the historic district encompasses more than one municipality. Rather than have Cape Cod divided up into separate historic districts created by each of the nine towns, the Legislature authorized the creation of a

propriateness for projects within their respective towns, they are enforcing locally adopted building standards, not a "State" program.

Finally, we note that exempting the town historic committees from the comprehensive permit scheme would leave in place the very form of local impediment to the development of affordable housing that the comprehensive permit act sought to eliminate. At a minimum, any requirement that a developer of affordable housing submit applications to an additional local agency increases the cost and adds to the delay in developing such housing. And, in the event that a town historic committee were dissatisfied with the proposed affordable housing project on any of the very general aesthetic grounds for which a certificate of appropriateness may be denied,[24] that historic committee's denial of a certificate would create an insurmountable barrier to the project — the town historic committee's decision could not be overridden by the housing appeal committee pursuant to G. L. c. 40B, § 23, no matter how deficient the region's supply of affordable housing. Leaving a town historic committee with effective veto power over proposed affordable housing would be wholly incompatible with the purposes of the

multiple-town historic district, but still left it up to those towns to decide whether they wanted such a historic district.

[24]While many of the aesthetic considerations at issue in a determination of historical appropriateness would not impose undue burdens on an affordable housing project (e.g., restrictions on paint color or style of windows), we note that limitations on "size," and consideration of the "relative size of buildings and structures," Historic Act, § 10, could be very problematic for proposed multi-family projects. From the point of view of a town historic committee, even a very modest sized apartment building would likely appear out of proportion to a classic Cape Cod saltbox. See *Harris* v. *Old King's Highway Regional Historic Dist. Comm'n,* 421 Mass. 612, 613, 616-617 (1996) (upholding historic commission's decision to deny certificate of appropriateness to project involving attached three-car garage and freestanding shed based on "sizing, massing and scale" of project); *Sleeper* v. *Old King's Highway Regional Historic Dist. Comm'n,* 11 Mass. App. Ct. 571, 573-574 (1981) (upholding historic commission's decision to deny certificate of appropriateness for proposed radio antenna that extended twenty feet above roof line). See also *Gumley* v. *Selectmen of Nantucket,* 371 Mass. 718, 723 (1977) (similarly worded statute creating historic district on Nantucket "confers on the commission a substantial measure of discretionary power with respect to 'the appropriateness of exterior architectural features' and congruity to historic aspects of the surroundings and the district").

comprehensive permit act. "The object of all statutory construc-
tion is to ascertain the true intent of the Legislature from the
words used. If a liberal, even if not literally exact, interpretation
of certain words is necessary to accomplish the purpose
indicated by the words as a whole, such interpretation is to be
adopted rather than one which will defeat that purpose."
*Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996), quot-
ing *Lehan* v. *North Main St. Garage*, 312 Mass. 547, 550
(1942). This principle of statutory construction confirms our
interpretation that a town historic committee is a "local board"
within the meaning of G. L. c. 40B, § 20.

*Judgment affirmed.*