Chernoff, Paul A., J.
The Housing Appeals Committee (“HAC”) vacated the decision of the Groton Zoning Board of Appeals (“Board”) and ordered the Board to issue a comprehensive permit for a development project. It also ordered the municipal electric department, Groton Electric Light Department (“GELD”), to grant an easement to the developer of a ten-foot strip of land paralleling the curved public roadway, with a further order that the developer Washington Green, LLC (“Green”) keep the strip of land cleared and mowed to insure appropriate sightlines for the benefit of the motoring public. The Board, Town, and GELD seek to reverse HAC’s decision and rein *335 state the Board’s denial of Green’s application for a permit. HAC and Green seek that the Court affirm the decision of HAC. On this Chapter 30A appeal, the Court grants the respondents’ Motion for Judgment on the Pleadings, and thereby AFFIRMS the decision of HAC. The Court DENIES the Motion for Judgment on the Pleadings of the petitioners.
At hearing, the petitioners argued that the HAC decision to overturn the Board and grant the permit was not based upon substantial evidence, that in fact, it was based on no evidence that the increased risk to the public safety posed by the proximity of residential development to the GELD substation was minimal in relationship to the public interest served by low or moderate income housing. The petitioners also claimed that HAC exceeded its authority by ordering GELD, a department of the Town, and the mere occupier of Town land, to grant an easement on the small strip of land, and argued that only a vote at Town Meeting could convey a property interest in Town land.
Green submitted a plan to the Board for a comprehensive permit pursuant to G.L.c. 40B, §§20-23 to build forty-four condominium units of mixed-income affordable housing on property which fronts on Lowell Road (State Route 40) and borders the GELD power substation. The Board, after public hearings, unanimously denied the permit on several grounds including, inter alia, that the EMF (“electromagnetic field”) and noise emitted from the substation would be detrimental to the occupants, the power station would be an attractive nuisance to children who might also damage the equipment, and the additional traffic and sightlines would present a danger to the motoring public.
The Court is not to substitute its judgment for that of the administrative agency, instead it is to determine whether or not the decision was based on substantial evidence bearing in mind that the agency, the HAC, alone weighs credibility, accuracy, and the persuasiveness of testimonial and documentary evidence. This Court gives “due weight to .the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” See G.L.c. 30A, §14(7). On questions of fact and the reasonable inferences drawn therefrom, the Court defers to the agency, but will examine the entire record and take into account evidence that supports the agency’s decision. See New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981).
Here, the Board had the authority to conclude that the evidence submitted by the instant petitioners was entitled to less weight. This Court finds that there was sufficient evidence to conclude that the noise from the substation’s transformers would not create an undue disturbance to residents, that no negative effects from EMF were proven, that the septic system would comply with title 5 and not threaten wetlands, and that there would not be a nonconforming storm water management system. As to nuisance, HAC was permitted to reject testimony from GELD’s expert as to the degree of an increased risk of injury and death that would result under the plan. HAC noted that there was no testimony that the risk was unacceptable. HAC also noted that there are already houses and children in the area, and acknowledged the fact that an “imposing soundwall” between the substation and the residences in the development would confront children and prevent a direct approach to the substation property. HAC had sufficient evidence to conclude that the petitioners had not met their “burden of proving that the danger inherent in the substation outweighs the regional need for affordable housing.” See 760 C.M.R. 31.06(6).[3] Furthermore there was sufficient evidence that only the limited sightlines presented a potential danger to vehicular traffic on the public way.
The Court appreciates the position of the Town that a giving up of property right in the Town’s realty is not a matter to be taken lightly. The order to GELD to give an easement to Green is functionally an order to the Town, and the Board of Selectmen in particular, to give the easement. Here, the easement amounts to a minimal giving up of a property right. Essentially, it means that the developer can and must cut the Town’s grass over a total area amounting to a sliver of land, a ten-foot strip of grass along a ninety-foot curved portion of the highway.[4] Under these circumstances, a vote of the Town Meeting is not essential. In Bd. of Appeals of Maynard v. House Appeals Comm., the Supreme Judicial Court deemed “frivolous” the argument that a vote of the town meeting was required in order to implement a HAC condition that the developer extend a sewer line. 370 Mass. 64, 69 (1976).

ORDER

The Court ALLOWS the Judgment on the Pleadings sought by the respondents HAC and Green, and DENIES the Judgment on the Pleadings sought by the Board, Town, and GELD.

Section 31.06(6) states that the Board’s burden of proof is as follows:
In the case of denial, the Board shall have the burden of proving, first, that there is a valid health, safety, environmental, design, open space, or other local concern which supports such denial, and then, that such concern outweighs the regional housing need.

If the Petitioners feel insecure in the requirement in HAC’s Conclusion contained in 2(d) that Green and its successors maintain the easement, then it may petition HAC which will set a reasonable bond to be posted by Green to insure maintenance of the easement. The Court was informed at the hearing that the requirement is moot that GELD allow emergency vehicles access to an existing roadway under transmissions lines and that Green should provide a connection to the cul-de-sac. Accepting that as true, the Court need not view that portion of the decision as an order granting a second easement.