451 Mass. 35 (2008)                                     35

Zoning Board of Appeals of Groton *v.* Housing Appeals Committee.

## Zoning Board of Appeals of Groton & others[1] *vs.* Housing Appeals Committee[2] & another.[3]

Middlesex. February 5, 2008. - March 31, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cordy, & Botsford, JJ.

*Zoning,* Housing appeals committee, Comprehensive permit. *Easement. Real Property,* Easement.

A Superior Court judge erred in affirming a decision of the housing appeals committee of the Department of Housing and Community Development (committee) ordering a town to convey an easement on its property to the developer of an affordable housing development project in that town, as a condition to the grant by the town's zoning board of appeals of a comprehensive permit to that developer, where G. L. c. 40B, §§ 20-23, conferred no such authority on the committee; where the committee lacked the power to override State law requiring that any order directing a town to convey an easement be authorized by a vote of the town meeting; and where common law did not support the transfer of an interest in municipal land in the form of a mandated easement. [39-41]

Civil action commenced in the Superior Court Department on October 21, 2005.

The case was heard by *Paul A. Chernoff,* J., on motions for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct appellate review.

*Mark Bobrowski* for Zoning Board of Appeals of Groton & another.

*Nicholas J. Scobbo, Jr. (Ann Ryan-Small* with him) for Groton Electric Light Department.

*Maryanne Reynolds,* Assistant Attorney General, for Housing Appeals Committee.

---

[1] The town of Groton, acting by and through its board of selectmen, and the Groton Electric Light Department.

[2] Of the Department of Housing and Community Development.

[3] Washington Green Development, LLC.

*Ray Lyons* (*David Wiseman, Jr.*, with him) for Washington Green Development, LLC.

*Thomas J. Urbelis*, for City Solicitors and Town Counsel Association, amicus curiae, submitted a brief.

GREANEY, J. This case, here on application for direct appellate review, raises the issue whether the housing appeals committee (committee) of the Department of Housing and Community Development may require, as a condition to the grant of a comprehensive permit for an affordable housing development project, that a municipality convey an easement on its land to the project's developer. We conclude that the committee lacks authority to do so and order the judgment entered in the Superior Court vacated.

The background of the case is as follows. In June, 2003, Washington Green Development, LLC (developer), a Massachusetts limited dividend organization, applied to the zoning board of appeals of Groton (board) for a comprehensive permit under G. L. c. 40B, §§ 20-23 (Act), to build a forty-four unit condominium project,[4] which would include eleven affordable units and thirty-three market-rate units. The project would be built on a 13.5-acre parcel of land located on the south side of Lowell Road (Route 40) in the town of Groton (town), and would involve construction of fourteen triplexes and one duplex.[5,6] The buildings would be located along an access road that enters the project site in a location where there is about 170 feet of frontage on the south side of Lowell Road. The access road would be about 800 feet long and would end in a looped cul-de-sac. Lowell Road, a busy, two-lane, State highway, with a speed limit of forty miles per hour, contains a curve to the west of the proposed entrance of the access road.

To the east of the project site on Lowell Road are two houses on large lots, and to the project site's west, on land owned by the town, is an electric power transfer substation controlled and

---

[4]The condominium units would be sold and not rented.

[5]The site for the proposed development comprises property located in a residential-agricultural district under the town's zoning bylaw.

[6]The town has not satisfied its minimum affordable housing obligation under G. L. c. 40B, § 20. See *Boothroyd* v. *Zoning Bd. of Appeals of Amherst*, 449 Mass. 333, 334 n.3 (2007).

operated by the Groton Electric Light Department (GELD).[7] The town's land (town's property) comprises about two acres, is adjacent to the project site, and surrounds the site on three sides.[8]

Most of the condominium units would be located to the side of, and behind, the substation, and also behind the existing houses. On the western portion of the project site, including both the area to the west of the substation and an area toward the rear of the project site, are high voltage electrical transmission lines that are permitted under an easement owned by National Grid. At the rear of project site to the east are wetlands.

After a series of public hearings, the board, in March, 2004, denied the developer's application for a comprehensive permit. The board based its denial, in part, on the existence of several safety hazards. The board found that there would be inadequate stopping sight distance for motor vehicles traveling south on Lowell Road that encounter another motor vehicle or an obstacle in the roadway at the intersection of Lowell Road and the access road. The board also found problematic the risk of motor vehicle accidents involving vehicles traveling from the access road on to Lowell Road. The board further grounded its denial on the developer's failure to show that the development could adequately be served by emergency vehicles, and the safety concerns that would result from only one proposed means of access for the development.

The developer appealed from the board's denial to the committee. G. L. c. 40B, § 22. Pursuant to 760 Code Mass. Regs. § 30.04(4) (2004), GELD was permitted to participate in the proceedings before the committee as an interested person, but not as an intervener. After conducting a de novo hearing, which included a site visit, the committee vacated the board's denial of the comprehensive permit, and directed the board to issue a comprehensive permit subject to enumerated conditions.

With respect to the safety issues, the committee agreed with

---

[7]Groton Electric Light Department (GELD) is a municipal light department established by vote of the town pursuant to G. L. c. 164, § 34. GELD receives one hundred per cent of the town's electric supply through the substation.

[8]The committee and the developer do not assert that the town's property is not under the control of the selectmen as set forth in G. L. c. 40, § 3.

the board that, if the access road were built with no changes to existing sight lines, the lack of stopping sight distance on Lowell Road would constitute a safety hazard. The committee, however, determined that the hazard could be eliminated by regrading and clearing vegetation on a portion of the town's property. That property measures approximately ten feet (at its widest point) by ninety feet in length. The committee noted that GELD was not willing to allow the developer to regrade and clear this portion of the property; activities that thus would require the developer to possess an easement. Acknowledging that conveyance of an easement would require a vote of the town meeting, the committee nonetheless concluded that it had authority under the Act to order the town to convey an easement. The committee determined that its power under § 21 of the Act "to issue permits or approvals as any local board or official" allowed it to remove any obstacles that local officials place in the way of an affordable housing development. Relying on *Board of Appeals of Maynard* v. *Housing Appeals Comm.*, 370 Mass. 64 (1976), the committee further concluded that a vote of the town meeting was a requirement or regulation contemplated under the Act with which it had the authority to dispense. In its order directing the board to grant the developer a comprehensive permit, the committee imposed a condition requiring GELD to grant to the developer, and its successors, "an easement [on the above-described town land] to permit regrading and clearing of vegetation sufficient to provide approximately 350 feet of stopping sight distance to the west of the proposed development entrance."

With respect to access to the project site, the committee agreed that legitimate local safety concerns existed because of the developer's proposal to have only a single access road serve the development. The committee concluded that this problem could be remedied by providing a second means of access by way of an existing dirt roadway lying within National Grid's easement, and bordering the western boundary of the property on which the substation sits. The committee noted that utilization of the dirt roadway would require crossing fifteen feet of the town's property. The committee, referring to the section of its decision concerning the sight line easement, found that if GELD was not

451 Mass. 35 (2008)                                          39

Zoning Board of Appeals of Groton *v.* Housing Appeals Committee.

willing to allow such a use, GELD could be directed to do so by the committee or by the board, by an order to convey a second easement.

The board and the town, acting by and through its selectmen (collectively the board), and GELD appealed from the committee's decision, G. L. c. 40B, § 22, jointly filing a complaint for judicial review in the Superior Court under G. L. c. 30A. The board, GELD, and the developer filed cross motions for judgment on the pleadings. The committee filed an opposition. A Superior Court judge denied the board's and GELD's motions, and allowed the developer's motion. On the issue of the sight line easement, the judge first noted that the order to GELD to convey an easement to the developer was, in essence, an order to the town, and its selectmen, to grant the easement. The judge recognized that "a giving up of property right in the [t]own's realty is not a matter to be taken lightly," but found that the first easement only involved "a minimal giving up of a property right." Relying on *Board of Appeals of Maynard* v. *Housing Appeals Comm.*, *supra*, the judge concluded that a vote of the town meeting to grant an easement was not required. The judge did not address the emergency access easement. Judgment entered in favor of the committee and the developer, affirming the committee's decision. The board and GELD appealed.

1. We conclude that the committee exceeded its authority under G. L. c. 40B by ordering GELD (or the town) to convey the sight line easement on the town's property because the Act confers no authority on the committee to order a municipality to convey an easement and, in so doing, the committee contravened State law.

a. An easement "is an interest in land which grants to one person the right to use or enjoy land owned by another." *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123, 133 (1990), *S.C.*, 412 Mass. 309 (1992). The grant of an easement constitutes the transfer of an interest in land (which in this case, because a town is involved, would require a town meeting vote). See *Oliver* v. *Mattapoisett*, 17 Mass. App. Ct. 286, 288 (1983). The fact that an easement may encumber only a small portion of an owner's land does not change its legal significance as the conveyance of a property

interest or right that places a burden on the property and possessory rights of the landowner.

The Act does not authorize the committee, directly or indirectly, to order the conveyance of an easement over land abutting the project site of a proposed affordable housing development. On review of a board's denial of an application for a comprehensive permit, the committee has "the same power to issue permits or approvals as any local board or official who would otherwise act with respect to such application." G. L. c. 40B, § 21. See *Dennis Hous. Corp.* v. *Zoning Bd. of Appeals of Dennis*, 439 Mass. 71, 77 (2003). An order directing the conveyance of an easement, however, cannot logically or reasonably derive from, or be equated with, a local board's power to grant "permits or approvals." The phrase "permits or approvals," read in the context of the entire Act, refers to building permits and other approvals typically given on application to, and evaluation by, separate local agencies, boards, or commissions whose approval would otherwise be required for a housing development to go forward. This interpretation is virtually compelled by the language, "who would otherwise act with respect to such application," appearing in § 21. The interpretation is further supported by the examples expressly cited in § 21, namely, action typically required by local permitting authorities with respect to "height, site plan, size or shape, or building materials." To obtain approval to develop a site (whether for affordable housing or another use), a developer would not usually be required to obtain easements from abutters, and a local board would have no authority to direct an abutter to grant an easement.

This same reasoning applies with respect to the committee's authority to override requirements and regulations, G. L. c. 40B, § 20, that might be imposed by local boards. See *Dennis Hous. Corp.* v. *Zoning Bd. of Appeals of Dennis*, *supra*. The requirements and regulations involved pertain to *local* zoning ordinances and bylaws, and "conditions and requirements with respect to height, site plan, size or shape, or building materials," G. L. c. 40B, §§ 20, 21; *Boothroyd* v. *Zoning Bd. of Appeals of Amherst*, 449 Mass. 333, 337-338 n.11 (2007), and do not relate to obtaining easements from abutters. As we have previously explained, the phrase "requirements and regulations" in § 20

describes "limitations on *an owner's use of his property*" (emphasis supplied), *Chelmsford* v. *DiBiase*, 370 Mass. 90, 94 (1976), not to the use of someone else's property.

b. Apart from the lack of authority in the Act for the committee to do what it did, the committee's power is further circumscribed by the fact that it lacks authority to override State law. See *Jepson* v. *Zoning Bd. of Appeals of Ipswich*, 450 Mass. 81, 85 n.9 (2007); *Board of Appeals of N. Andover* v. *Housing Appeals Comm.*, 4 Mass. App. Ct. 676, 680 (1976). The committee properly acknowledged that any order directing the town to convey an easement requires authorization by a vote of the town meeting, G. L. c. 40, §§ 3, 15A. See *Harris* v. *Wayland*, 392 Mass. 237, 243-244 (1984); *Oliver* v. *Mattapoisett, supra.* The committee's determination, however, that this prerequisite constituted a requirement or regulation under G. L. c. 40B, § 20, that it could set aside overlooks the fact that town meeting authorization for the conveyance is a directive imposed by the Legislature. *Jepson* v. *Zoning Bd. of Appeals of Ipswich, supra.* The Act may only be relied on to remove *locally* imposed barriers to affordable housing, not State law governing the disposition, or transfer, of land, or interests in land, owned by municipalities. To be sure, in enacting G. L. c. 40B, the Legislature indicated that, in some circumstances, compliance with locally imposed barriers may need to yield to the regional need for affordable housing, but this legislative judgment cannot be stretched to empower the committee to act as the legislative body of a municipality for purposes of land transfers. See *LeClair* v. *Norwell*, 430 Mass. 328, 336 (1999).

Finally, the committee and the judge erroneously relied on the decision of *Board of Appeals of Maynard* v. *Housing Appeals Comm., supra,* to reach their conclusions. That case involved the extension of a sewer line (under G. L. c. 83) for which the developer, and not the public, agreed to bear all costs. *Id.* at 68-69. The case did not involve or authorize the transfer of an interest in municipal land in the form of a mandated easement.[9]

---

[9]What has been said obviates the need to consider other issues raised by the committee and the developer. We also do not have to address the grant of the

2. The board properly denied the application for a comprehensive permit. The judgment is vacated, and a new judgment is to enter consistent with this opinion.

*So ordered.*

---

emergency access easement or GELD's argument that the committee's decision was, in key aspects, unsupported by substantial evidence.