Rudders *v.* Building Commissioner of Barnstable.

RICHARD RUDDERS & another[1] *vs.* BUILDING COMMISSIONER OF BARNSTABLE & another.[2]

No. 99-P-637.

Barnstable. January 16, 2001. - March 2, 2001.

Present: PERRETTA, KAPLAN, & GELINAS, JJ.

*Historic District Commission*, Appeal. *Practice, Civil*, Notice of appeal, Zoning appeal. *Zoning*, Appeal, Parties. *District Court*, Jurisdiction. *Words*, "Party aggrieved."

A Superior Court judge erred in striking a notice of appeal filed by the Old King's Highway Committee of Barnstable from a judgment against the committee, a party to the action. [110-111]

Where a house was being built not in conformance with a duly issued certificate of appropriateness, applicable to property in the Old King's Highway Regional Historic District, it was appropriate for the municipal building commissioner to issue a stop work order pending modification or issuance of a new certificate, and a Superior Court judge erred in ordering that the stop order be revoked. [111-113]

CIVIL ACTION commenced in the Superior Court Department on February 19, 1998.

The case was heard by *Richard F. Connon*, J., and a motion to strike a notice of appeal was heard by *Gerald F. O'Neill, Jr.*, J.

*Robert D. Smith*, Town Counsel (*Ruth J. Weil* with him) for the defendants.

*James H. Quirk, Jr.* (*Thomas J. Perrino* with him) for the plaintiffs.

KAPLAN, J. Omitting various details, the case stands thus. Richard Rudders and Joan Rudders, his wife (plaintiffs), own

[1]Joan Rudders.
[2]Old King's Highway Committee of Barnstable.

property at 36 Sunset Lane, Barnstable. Under the Old King's Highway Regional Historic District Act, St. 1973, c. 470, as amended (Historic Act), covering Barnstable and other areas, the plaintiffs on September 17, 1997, applied to the local Barnstable Old King's Highway Committee (Barnstable committee) for a "certificate of appropriateness" on the basis of a plot plan. A certificate issued on October 8, 1997, authorizing the demolition of the single-family house on Sunset Lane, and its replacement by a two-family house. Before demolition began, the plaintiffs recognized they had not intended the setting of the new house as shown on the plot plan, but a setting about 4.4 feet closer to the Sunset Lane line. The plaintiffs demolished the existing house and began construction of the new house with their desired setting.[3] The Barnstable committee, in the face of the deviation from the granted certificate, on February 9, 1998, took formal action and requested the Barnstable building commissioner to issue a stop work order to halt further construction. The building commissioner issued the order on February 10.[4]

The plaintiffs protested the decision of the Barnstable committee resulting in the stop work order. They said that upon noting their certificate did not match their intention — a difficulty they seemed to attribute to their own mistake — they asked their contractor to consult the "building department," and he was told (by an unnamed person or persons) the deviation was acceptable so long as no zoning problem was created.

To overcome the stop work order, the plaintiffs commenced the present action in Superior Court against the defendants Barnstable committee and building commissioner demanding (i) an injunction enjoining the Barnstable committee from taking any action to prevent the plaintiffs from constructing the house with the change of setting, and (ii) an order of mandamus direct-

---

[3]A neighbor, Joseph F. Dugas, was complaining of an interference with his view.

[4]The committee made an informal request to the building commissioner on December 23, 1997, which was followed on January 21, 1998, by a brief note from the building commissioner to the chairman of the Barnstable committee that "the height and location are substantially in conformance with Zoning and the intent of the O.K.H. act. I believe the stop work order should be lifted. I intend on doing that forthwith."

ing the building commissioner to revoke the stop work order, thus authorizing construction pursuant to the building permit.

Upon the defendants' "Suggestion of Want of Jurisdiction [of the Superior Court] and Opposition to Plaintiffs' Motion for Preliminary Injunction" and "Motion to Dismiss Plaintiffs' Complaint," a judge of the Superior Court, effectively denying the defendants' motion to dismiss, refused the injunction against the Barnstable committee, holding that the Superior Court lacked jurisdiction to issue such process, which must come, if at all, from a District Court (see § 12 of the Historic Act). Yet the judge granted the requested mandamus order, in part, by directing the building commissioner to revoke the stop work order; he declined to order the building commissioner to allow construction to proceed pursuant to the building permit.[5] The effective judgment therefore read: "ORDERED . . . that the February 10, 1998, stop work order issued by the Town of Barnstable, Building Commissioner is revoked."

The Barnstable committee duly filed a notice of appeal from the judgment.

Thereupon the plaintiffs moved to strike the notice of appeal on the alleged ground that the Barnstable committee was not a party "aggrieved." The court allowed the motion to strike.

The Barnstable committee duly noticed its appeal from the order striking the notice of appeal.[6]

1. *Lower court's error in striking the notice of appeal.* The court erred in striking the Barnstable committee's notice of appeal from the court's own judgment. As the Barnstable committee correctly argues, while the lower court may annul a notice of appeal for certain procedural reasons,[7] there is no basis for annulling a notice of appeal filed by a party to the action for the reason that, in the lower court's view, the appeal would be

---

[5]The judge denied the motion of the neighbor Dugas to intervene in the action.

[6]That an appeal to our court lies from an order of the lower court striking a notice of appeal to our court, see *Zieminski* v. *Berkshire Div. of the Probate & Family Ct.*, 408 Mass. 1008, 1009 (1990).

[7]As for filing the notice untimely, *Catalano* v. *First Essex Savs. Bank*, 37 Mass. App. Ct. 377, 383 (1994); failure to docket appeal, Mass.R.A.P. 10(c), as amended, 378 Mass. 938 (1979); failure to give required bond, *Kargman* v. *Dustin*, 5 Mass. App. Ct. 101, 106-108 (1977).

without merit, whether for the appellant's lack of aggrievement, or for any other ground of substance. Questions going to the merits of the claimed appeal are for the appellate court to decide. Compare *Chongris* v. *Board of Appeals of Andover*, 17 Mass. App. Ct. 999 (1984).

If, perchance, it could be held that the lower court might strike a notice of appeal on the supposed ground that the appellant was not "aggrieved" by the judgment intended to be appealed from, then we are clear in the present case that the Barnstable committee was a party aggrieved. For — as shown more particularly in our point 2 below — the judgment appealed from was in defiance and derogation of the authority of the Barnstable committee as part of the administrative structure with ultimate judicial review set up by the constitutive Historic Act.

2. *Lower court's error in declining to dismiss the action.* We examine the Historic Act, as implemented by regulations of the Old King's Highway Regional Historic District Commission (district commission) published in the commission's "Bulletin."[8] Local committees, such as the Barnstable committee, are subordinate to the district commission. Local committees, on application, issue certificates of demolition and appropriateness for unexempted properties located within their respective areas of the historic regional district. (Forms of these certificates are set out in the Bulletin.) Local building commissioners may not permit construction (or demolition) of a building without presentation of the relevant certificate.[9] If an applicant is dissatisfied with the denial of a certificate or with the

[8]The district commission is empowered to issue regulations by the Historic Act, § 4; these have been promulgated in a "Bulletin" (reproduced in the case appendix) to which we refer.

[9]Under the Historic Act, § 6, fourth par., as amended by St. 1975, c. 845, § 8, "Except in cases excluded by section seven [exclusions], no permit shall be issued by the building inspector for any building or structure to be erected within the district, unless the application for said permit shall be accompanied either by a certificate of appropriateness or a certificate of exemption which has been filed with the town clerk." More generally, by § 12, second par., as amended by St. 1975, c. 845, § 15, "The building inspector in the affected town shall have the power and duty to enforce the provisions of this act"; see also Old King's Highway Regional Historic District Commission Bulletin, Guideline A (Dec. 1983), text to the same effect.

terms of a granted certificate, the applicant's recourse is to appeal to the district commission.[10] (A form of "Petition for Appeal" is published in the Bulletin.) Where an applicant is dissatisfied with a district commission's decision, he may secure judicial review by a District Court,[11] from which appeal lies to the Appellate Division of the District Court.[12] "The remedies provided by this section [§ 11 on 'Appeals'] shall be exclusive."[13]

In the present case, the plaintiffs' certificate of appropriateness issued by the Barnstable committee would not authorize the construction actually undertaken and the building commissioner could not permit such construction.[14] Therefore it was correct for the Barnstable committee to request the building commissioner to issue a stop work order and for the building commissioner to issue it.[15] The proper procedure for the plaintiffs at this point would have been to apply to the Barnstable committee for a modification of their certificate to correspond to the actual construction line or for the issuance of a new certificate to that effect. Where the change required is considered minor, the Bulletin allows the local committee to modify the certificate without the formality prescribed for the issuance of a new certificate.[16] If the Barnstable committee refused relief, the plaintiffs' road would lead to the district commission and thence, if need be, to the District Court.

When the judge below refused the plaintiffs' application for an injunction against the Barnstable committee for want of the Superior Court's "jurisdiction," he seemed to be mindful of preserving the integrity of the administrative-judicial scheme established by statute; but then, curiously, the judge scorned that salutary motive by issuing an order against the building

---

[10]See Historic Act, § 11, first par., as amended by St. 1975, c. 845, § 13.

[11]Historic Act, § 11, second par., as amended by St. 1977, c. 503, § 4.

[12]Historic Act, § 11, fifth par., as amended by St. 1982, c. 338, § 8.

[13]Historic Act, § 11, fifth par.

[14]The Bulletin in Guidelines A and B calls for submission of plans and location with applications for appropriateness.

[15]It was folly for the plaintiffs to rely on a talk with an unidentified person in the building department in order to bypass the decision of the Barnstable committee and the enforcement order of the building commissioner.

[16]See Bulletin, Guideline E, which concludes in par. 1: "All alterations by amendment or otherwise will require the local Committee's approval."

commissioner who for present purposes is but an enforcement arm of the Barnstable committee.

This is not the first case of a court's precipitous interference with a calculated administrative procedure culminating in judicial review. In early years such intrusion often reflected hostility toward newfangled administrative agencies and administrators. In the present case the intrusion likely reflects impatience with what the judge may see as bureaucratic fussiness over a trivial matter. Whether or not the matter is trivial (it is not so to the property owners), the judge erred in flouting the legislated design. The judge should have allowed the defendants' motion to dismiss.

It has been represented to us (but does not appear in the record before us) that the status quo has not been maintained and the house has been completed to the plaintiffs' desire. It is also represented that the neighbor Dugas has brought a suit against the instant plaintiffs that may be relevant to the property. We leave these matters to the parties for settlement or litigation as they may choose.

The judgment allowing the plaintiffs' motion to strike the defendant's appeal is reversed. The judgment of mandamus is vacated and the action is dismissed.

*So ordered.*