Williams, P.J.
The Old King’s Highway Regional Historic District (“District”) encompasses a sizable swath of Cape Cod surrounding Route 6A (Old King’s Highway) in several Cape towns.[4] The statute governing the District, St. 1973, c. 470, *101 as amended (“the Act”),[5] requires a person seeking to construct or alter a structure within its ambit to obtain a certificate of appropriateness (“certificate”) from the relevant Town Committee in order to allow any such project to proceed.[6] Any “person aggrieved” by a committee decision about an application may appeal that decision to the Regional Commission (“Commission”), and any “person aggrieved” by a Commission decision may seek review thereof in the District Court having jurisdiction over the town where the subject property is located.[7] Here, the plaintiff, Aquacultural Research Corporation (“ARC”), sought and received a certificate from the Dennis Committee to erect a wind turbine on its property. A Dennis resident, Rosemarie Austin (“Austin”), appealed that decision to the Commission, which *102 found that the Dennis Committee had exercised poor judgment and so annulled that decision and denied the application. ARC, in turn, appealed that decision to the Orleans District Court. The trial judge found that the Commission had exceeded its authority, and reversed that decision, thus affirming the Dennis Committee’s decision to issue the certificate. Included in the trial judge’s decision was his conclusion that Austin had standing to have appealed to the Commission from the Dennis Committee because she was a “visual abutter” as to the proposed turbine and the value of her property might be devalued were the turbine erected. Because we find that that determination was error as a matter of law, we do not reach the merits of the case, since it should not have progressed beyond the Dennis Committee’s decision. We vacate the trial court’s decision. Although we do so, the result remains the same. The effect of our decision is that the case returns to where it stood before the appeal to the Commission: with the issuance by the Dennis Committee to ARC of the certificate.
The Legislature originally enacted the Act in 1973 to promote the welfare of the District through “the preservation and protection of buildings, setting and places ... and through the development and maintenance of appropriate settings, the exterior appearance of such buildings and places, so as to preserve and maintain such regional district as a contemporary landmark compatible with the historic, cultural,literary and aesthetic tradition of Barnstable county, as it existed in the early days of Cape Cod, and through the promotion of these past historic associations of Barnstable county.” Act, §1.[8] See Harris v. Old King’s Highway Regional Historic Dist. Comm’n, 421 Mass. 612, 614-615 (1996). See also MacRobbie v. Old King’s Highway Regional Historic Dist. Comm’n, 1992 Mass. App. Div. 42, 43 (purposes of Act “primarily to preserve historical landmarks and insure compatibility with other structures”).
ARC wished to construct a 600-kilowatt wind turbine on its 39.7-acre Dennis property to help defray its costs as a shellfish cultivator and wholesaler.[9] ARC’s property is bounded by Chapin Memorial Beach, Chase Garden Creek (the boundary between Dennis and Yarmouth), and conservation land. Existing buildings on ARC’s *103 land, including a warehouse, greenhouse, and a main building containing a hatchery, are one-story structures. The proposed turbine would be 164 feet tall from its base to the hub of the blades, and 242 feet tall from its base to a fully vertical blade tip. The base would be 10 feet in diameter, and would be set in a concrete-slab foundation 50 feet in diameter.
In July, 2010, ARC applied to the Dennis Committee for a certificate of appropriateness so that it could begin constructing the proposed turbine. After two public hearings, the Committee approved ARC’s application.[10]
In September, 2010, Austin appealed the Dennis Committee’s approval to the Commission. Following a public hearing later that month, the Commission determined pursuant to §11 of the Act that the Dennis Committee had exercised poor judgment in approving ARC’s application. The Commission did not address Austin’s standing as an aggrieved person entitled to have appealed the Dennis Committee’s decision.[11] The Commission, apparently assuming jurisdiction to consider such an appeal, denied ARC a certificate of appropriateness for the proposed turbine on the *104 ground that the Dennis Committee had exercised “poor judgment” in granting the certificate.
ARC — unquestionably a “person aggrieved” — then appealed the Commission’s decision to the Orleans District Court, seeking annulment of that decision and an order that the desired certificate be issued. The trial judge allowed the town of Dennis to intervene, and denied the motion of the town of Yarmouth to do so. After two years of litigation, a three-day trial began in January, 2013; much evidence was admitted in written form to reduce the number of trial days. In February, 2013, the trial judge issued a comprehensive 23-page opinion, reversing the Commission’s decision and reinstating the Dennis Committee’s decision to grant ARC a certificate of appropriateness. Because we find that Austin was not a proper “person aggrieved” to have appealed the decision of the Dennis Committee to the Commission, we do not reach any other issues presented in the trial judge’s decision or raised in this appeal.
The trial judge in such appeals “may hear all pertinent evidence and determine the facts.” Act, §11. See, e.g., Anderson v. Old King’s Highway Regional Historic Dist. Comm’n, 397 Mass. 609, 611 (1986). “The judge’s findings of fact are ‘final and conclusive.’” Anderson, supra, quoting Act, §11. We review the implicit finding of the trial court regarding standing without regard to the lack of attention by the Commission to the issue. The trial court must find, or not, that a person had standing to have appealed to the Commission and not just to have appealed to the District Court. Usually, those parties have been the same,[12] but here they are not. ARC obviously had standing to have appealed the Commission’s decision to the District Court. Austin, we must conclude, did not enjoy such standing.
*105 The trial judge devoted two pages of his decision to the issue of her standing, which had been raised at trial by the intervenor town of Dennis.[13] Noting that the issue of Austin’s standing “was apparently not argued” before the Commission, the trial judge declared, correctly, that the question of one’s standing — in the language of the Act, as a “person aggrieved” — is a jurisdictional issue that may be raised at any time. Warrington v. Zoning Bd. of Appeals of Rutland, 78 Mass. App. Ct. 903, 904-905 (2010), citing, inter alia, Planning Bd. of Marshfield v. Zoning Bd. of Appeals of Pembroke, 427 Mass. 699, 703 (1998), and Barvenik v. Aldermen of Newton, 33 Mass. App. Ct. 129, 131 (1992) (status as “party aggrieved” is status conferring standing to prosecute an appeal; standing is an issue of subject matter jurisdiction that cannot be waived and may be raised at any stage of proceedings).[14]
The trial judge found that Austin is not an abutter to the ARC property. Her home, which is otherwise undescribed, is “about three-quarters of a mile as the crow flies from the ARC facility.”[15] Neither Austin’s home nor her neighborhood has “any historic significance.” Austin’s view (whether from her house or elsewhere on her property is not known) encompasses marshes, conservation land, and, in the distance, Cape Cod Bay, and that view is unobstructed except by ARC’s ‘large and dilapidated-appearing buildings.” The proposed turbine “would be very visible from Austin’s property,” although no specifics about such a potential view were provided. She *106 would thus be a “visual abutter.” The trial judge suggested that the turbine would be “incongruous in this setting,” and that its presence would have a “negative effect, albeit one not calculable to a specific amount based on the evidence before the court, on the value of Ms. Austin’s property.”[16]
Because Austin is not an abutter, the trial judge, quoting Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 27-28 (2006), observed that she must, as a threshold matter, “assert ‘a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest.’ (Citation omitted.) Of particular importance, the right or interest asserted must be one that the statute under which a plaintiff claims aggrievement intends to protect.”
He observed that the purpose of the Act “is to suppress the obviously incongruous,” Sleeper v. Old King’s Highway Regional Historic Dist. Comm’n, 11 Mass. App. Ct. 571, 574 (1981), and characterized the Act as being “concerned with the visual appearance of things.” And when a zoning ordinance demands consideration of the visual impact of a proposed structure on a neighborhood, “in order for a[n] [allegedly aggrieved person] to establish standing based on the impairment of an interest protected by [the] zoning bylaw, [that person] would need to show a particularized harm to [her] own property and a detrimental impact on the neighborhood’s visual character.” Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 121 (2011). He concluded that “[a]s a Visual abutter,’ Austin has a more particularized detriment from the project and thus had standing to appeal from the decision of the [Dennis] Committee.”
We have found no authority, anywhere, sanctioning the concept of one’s status as a “visual abutter” (or even using that term) so as to qualify him or her as a “person aggrieved” under this Act or any similar statute, or to otherwise confer standing on a person.
The fullest explication of assessing whether someone is a “person aggrieved” within the meaning of the Act remains the Appellate Division’s opinion of Allen v. Old King’s Highway Regional Historic Dist., 2000 Mass. App. Div. 330. In Allen, which *107 concerned the proposed addition to a house in Sandwich, none of the six plaintiffs was an abutter to the subject property. The nearest plaintiff lived “four houses” away from the subject residence, and the farthest lived about five miles away. Id. at 331. At least some of the plaintiffs were members of the Sandwich Town Committee, which had denied the application for a certificate of appropriateness in the first instance.[17]
Allen stressed that when the Legislature created the Commission, it did not intend “to create a private right on the part of citizens of a community to enforce the provisions of the Act.” Id. at 331. A purported plaintiff’s burden of establishing status as a “person aggrieved” is not a “procedural nicety,” but rather “goes to the very heart of the courf s authority to hear and determine the cause.” Id., citing, inter alia, Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957). See also Coalition to Preserve Belmont Uplands & Winn Brook Neighborhood v. Department of Envtl. Protection, No. 12-P-526 (Mass. App. Ct. Sept. 9, 2013) (unpublished Rule 1:28 decision), citing Planning Bd. of Marshfield v. Board of Appeals of Pembroke, 427 Mass. 699, 703 (1998) (lack of standing goes directly to subject matter of court).
Someone’s proximity to the subject property does not automatically confer “standing” upon that person, Allen, supra at 331, citing Marotta, supra at 203, and would, presumably, not automatically establish one as being a “person aggrieved.”
As Allen noted, the District encompassed by the Act
is a large one. [18] To suggest that any inhabitant or property owner in so large a district may invoke the judicial review provisions of the Act without making a plausible claim of a definite violation of a private right would be inconsistent with the purposes of the Act by enlarging the class of potential plaintiffs who might attack the decision of the commission solely on aesthetic or other subjective grounds. To put the commission and the applicants to the expense of litigation when assailed from so large a quarter would not be consistent with the fair balance between the reasonable expectation of property owners to the use of their land and the preservation of antiquity espoused by the Act (emphasis added).
Id. at 332. Once evidence is offered challenging the presumption of aggrievement, that presumption evaporates, and the issue of jurisdiction must be considered anew. Id. at 331, citing Waltham Motor Inn, Inc. v. LaCava, 3 Mass. App. Ct. 210, 217 (1975). As Allen emphasized, simple civic interest in enforcing historic zoning is *108 insufficient to confer standing. Id. at 331, citing Amherst Growth Study Comm., Inc. v. Board of Appeals of Amherst, 1 Mass. App. Ct. 826 (1973). Indeed, one “zealous in the enforcement of the laws but without a judicially recognized private interest is not a ‘person aggrieved.’” Id., citing Godfrey v. Building Comm’r of Boston, 263 Mass. 589, 590 (1928). Such zeal is precisely what Austin demonstrated before the Commission and the District Court.
Further, “[sjubjective and unspecified fears about the possible impairment of aesthetics or neighborhood appearance, incompatible architectural styles, the diminishment of close neighborhood feeling, or the loss of open or natural space are all considered insufficient bases for aggrievement under Massachusetts law.” Id., quoting Barvenik, supra at 132-133. And the Division in Allen found language in Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491 (1989), to be “apt and germane”: concerns about “diminished open space, incompatible architectural styles, the belittling of historical buildings, and the diminished enjoyment of the ‘village feeling’” boiled down to “the expression of aesthetic views and speculative opinions,” which “do not establish a plausible claim of a definite violation of a private right, property interest or legal interest sufficient” to confer standing on a prospective plaintiff. Allen, supra at 331-332, quoting Harvard Sq. Defense Fund, Inc., supra at 493. Austin’s concerns with the proposed turbine are exactly these: that its looming presence would be detrimental to the character of the area generally, that it would tarnish the view from her home (although even this apprehension was not sharply expressed), and that it might reduce the value of her home (which, again, was itself not even described, and the value was not quantified in any way, notably through any acceptable opinion).
The Division in Allen specifically rejected argument that determining “person aggrieved” status should be made under “the more liberal interpretation” for deciding standing under G.L.c. 40C, the Historic Districts Act. Allen, supra at 332. The Division concluded that G.L.c. 40C did not apply to the Act and that the “liberal definition of ‘aggrieved persons’ is inapposite to cases arising under the [Act].” Id. Cf. Home Bldrs. Ass’n of Cape Cod, Inc. v. Cape Cod Comm’n, 441 Mass. 724, 733 (2004) (standing requirements in declaratory judgment proceedings should be liberally construed). We observe, however, that recently, the plaintiffs in Kelley v. Cambridge Historical Comm’n, 84 Mass. App. Ct. 166 (2013), proceeding under G.L.c. 40C, were found to lack standing even under what the Division in Allen had considered in 2000 to be that statute’s “liberal” approach. The Kelley plaintiffs were neighbors but not abutters to a historical church, to which changes were planned. Those neighbors’ proximity to the church was “beside the point,” and alleged harms such as increased traffic, diminished public parking, impaired snow removal, and “aesthetic impacts (e.g., their having to look at a ‘prison wall’)” did not confer standing absent a showing that their harm was distinct from that suffered by the public at large. Id. at ISO-181. Such an “aesthetic impact” is precisely Austin’s chief claim to standing. As in Kelley, such an impact must fall short of achieving standing.
However mindful we are that the aim of the Act is to preserve the District as a “landmark compatible with the historic, cultural, literary and aesthetic tradition” of Cape Cod, as it existed “in the early days,” Austin’s aesthetic concerns, even paired with the speculative diminution of the value of her property, are not enough to have supported a conclusion by the trial court that she qualified as a person aggrieved so *109 as to challenge the decision of the Dennis Committee before the Commission. Because of that deficiency, we vacate the judgment of the Orleans District Court, recognizing that the effect of this decision is to restore the case to the point it existed when the Dennis Committee issued to ARC its certificate of appropriateness. The judgment of the Orleans District Court is vacated.
So ordered.

 The history of the Old King’s Highway itself is somewhat foggy. One writer sought to determine which “Old King” the road commemorated, assuming it was King George III — “but it’s much older than that — a late 17th century extension of the King’s Highway from Plimouth... [and] one of America’s most scenic highways.” The Old King’s Highway: Route 6A Cape Cod, at www.miladysboudoir. word-press.com/2012/10/10/the-old-kings-highway-route-6a-cape-cod (last viewed May 30, 2014). Other commentators are unconvinced of the provenance of the road: “Route 6A is of far more recent vintage than colonial times. The name “Old King’s Highway” is a publicity gimmick.’... The road was built largely in the 1920s when cars began replacing trains.” Kandell, A Road Less Traveled: Cape Cod’s Two-Lane Route 6A Offers a Direct Conduit to a New England of Yesteryear, Smithsonian Mag. (April, 2005), at www.smithsonianmag.com/travel/a-road-less-traveled-79489150/ (last viewed May 30, 2014). Surely, though, the presence of numerous authentic colonial buildings fronting the road suggests that if its name is of 20th century origin, its track is not.

 St. 1973, c. 470; as amended, St. 1975, c. 298 and c. 845; as amended, St. 1976, c. 273; as amended, St. 1977, c. 38 and c. 503; as amended, St. 1978, c. 436; as amended, St. 1979, c. 631; as amended, St. 1982, c. 338; as amended, St. 1994, c. 90; and as amended, St. 2007, c. 220.
Section 4 of the Act empowers the Commission to issue rules and regulations, which have been promulgated in a “Bulletin.” See, e.g., Rudders v. Building Comm’r of Barnstable, 51 Mass. App. Ct. 108, 111 n.8 (2001). The decision of the trial court, and ours, is grounded in the language of the Act itself, and not in these more detailed regulations.

 Section 6 of the Act provides in pertinent part that “[n]o building, structure or part thereof, except as hereinafter provided, shall be erected within the district unless and until an application for a certificate of appropriateness as to the exterior architectural features shall have been filed with the committee.”

 Section 11 of the Act provides in pertinent part:
Any person aggrieved by the determination of the committee ..., whether or not previously a party to the proceeding, may, within ten days after filing of a notice of such determination with the town clerk..., appeal to the commission. The commission shall, "within thirty days after receipt of such appeal in writing from the aggrieved, hear all pertinent evidence and determine the facts, and if, upon the facts so determined, the commission finds that the committee exceeded its authority or exercised poor judgment, was arbitrary, capricious, or erroneous in its action, the commission shall annul the committee determination or approval and remand the case to said committee for further action or revise the determination of the committee and issue the appropriate certificate or deny it.
Any person aggrieved by the action of the commission, may, within twenty days after notice of said decision has been filed with the town clerk of the affected town, appeal to the district court having jurisdiction over the affected town. ...
Said district court may hear all pertinent evidence and determine the facts and if, upon the facts so determined, such determination or approval is found to exceed the authority of the commission, said district court may modify... the decision... and shall have all of the powers to act in the matter that are available to a court of general equity jurisdiction.

 Section 1 of the Act, as amended by St. 1982, c. 338, §1, now reads in its entirely:
The purpose of this act is to promote the general welfare of the inhabitants of the applicable regional member towns so included, through the promotion of the educational, cultural, economic, aesthetic and literary significance through the preservation and protection of buildings, settings and places within the boundaries of the regional district and through the development and maintenance of appropriate settings and the exterior appearance of such buildings and places, so as to preserve and maintain such regional district as a contemporary landmark compatible with the historic, cultural, literary and aesthetic tradition of Barnstable county, as it existed in the early days of Cape Cod, and through the promotion of its heritage.

 “Aquaculture” is “the artificial cultivation of shellfish planted in trays or pens and protected by netting.” Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349, 351 n.6 (2001).

 Austin attended the public meeting on August 11,2010. She asked if ARC had a plan should the turbine bother “neighbors” with noise or “flicker” problems, and whether hours of use of the turbine could be limited. She apparently reported that the ARC “property is in complete disarray,” thus engendering a worry about upkeep of the turbine. And she inquired if the size of the turbine could be limited to provide ARC only with the energy it required.

 We note the apparent total absence of any consideration by the Commission of the issue of Austin’s status as a “person aggrieved” so as properly to be before the Commission at all. The Commission’s 14-page “Decision for Appeal No. 2010-7” of October 25, 2010 reviewed the presentations of numerous people who attended a public hearing in September. Among those presenters was Austin, described only as being “of Dennis.” Austin had appealed to the Commission on behalf of herself and neighbors. In her appeal notice, she declared that a 242-feet-tall turbine, visible from “all surrounding sides” in a flat landscape, part of which is a “pristine historic area,” constituted a “direct violation” of the Act. Such turbines, she stated, “were not in demand” when the Act was drafted. The proposed turbine was, simply, “too large a structure for this area.” At the hearing, Austin claimed to the Commission that the Dennis Committee had “exercised poor judgment” by failing adequately to weigh such information about the proposed turbine. Specifically, she asserted that the Dennis Committee had not addressed the “industrial and commercial” nature of the turbine, which was planned for an area zoned for residential use, and that the maximum permitted height for a turbine in such a zone was only 45 feet and not the proposed 242-feet height. None of the five areas in Dennis where turbines had been authorized fell within the District. She expressed concern about the groundwater table at the planned turbine foundation site. Finally, she argued that the Dennis Committee had failed to consider the adverse impact the turbine would exert “on an environmentally sensitive residential part of the” District. In rebuttal to part of ARC’s presentation, Austin also wondered whether ownership of the turbine would pass to a purchaser of ARC’s property should ARC sell it.
*104 However valid these views might have been, they are general and policy-oriented and devoid of any facts specific to Austin or her property: they patently could not support her standing as a “person aggrieved” for the purposes of appealing the Dennis Committee’s decision. The most that can be inferred about Austin from the Commission’s decision is that she lived in, or was from, Dennis. The Commission did not determine from Austin’s notice of appeal whether she was a proper “person aggrieved” so as to qualify to proceed. And it made no reference in its decision to a “person aggrieved” so as to trigger an appeal at all; it simply noted that the appeal had been “entered” with the Commission within the requisite time period. The lack of any “standing” evidence would seem to mandate a conclusion that the only proper option open to the Commission would have been to dismiss Austin’s appeal because she simply did not qualify under §11 of the Act to have generated an appeal at all. Any other outcome seems wholly unsupported.

 See Harris v. Old King’s Highway Regional Historic Dist. Comm’n, 421 Mass. 612 (1996); Anderson v. Old King’s Highway Regional Historic Dist. Comm’n, 397 Mass. 609 (1986); Sleeper v. Old King’s Highway Regional Historic Dist. Comm’n, 11 Mass. App. Ct. 571 (1981); Mason v. Old King’s Highway Regional Historic Dist. Comm’n, 2001 Mass. App. Div. 125; MacRobbie v. Old King’s Highway Historic Dist. Comm’n, 1992 Mass. App. Div. 42; Paananen v. Old King’s Highway Regional Historic Dist. Comm’n, 1991 Mass. App. Div. 135. Cf. Allen v. Old King’s Highway Regional Historic Dist., 2000 Mass. App. Div. 330.

 The Commission argues that the trial judge’s decision to have allowed the town of Dennis to intervene in the action was in error. Even assuming that the argument is properly raised, given its casual treatment — a footnote in the brief — see Waters v. Western World Ins. Co, No. 11-P-2124, at n.7 (Mass. App. Ct. Feb. 12,2013) (unpublished Rule 1:28 decision), citing Commonwealth v. Clerk-Magistrate of W. Roxbury Div. of the Dist. Ct. Dept., 439 Mass. 352, 361 n.7 (2003), we need not decide whether that intervention was proper since ARC has also pressed the issue of Austin’s lack of standing. But see Allen, supra at 331 n.5 (inappropriate for town officers to appeal rulings of Regional Commission absent specific authorization of town). See also, e.g., Thornton v. Kuzborski, No. 11-P-1942 (Mass. App. Ct. March 14, 2013) (unpublished Rule 1:28 decision), citing Nature Church v. Assessors of Belchertown, 384 Mass. 811, 812 (1981), and Mass. R. Civ. R, Rule 12(h)(3) (obligation of trial judge to address issue of standing).

 Although the Act has aspects of being sui generis, some of its language reflects, sometimes exactly, language from zoning laws or other historic-district acts. As the Appellate Division remarked in Mason, supra at 127, “where the issues of land use and preservation are common themes of both the zoning laws and the [Act], it is logical to presume ... that the Legislature had in mind the existing judicial interpretation of zoning appeal requirements when it chose virtually identical language for appeals taken under the [Act].” See also, e.g., Harris, supra at 615 (standard of review in district court analogous to special-permit granting power provided in local zoning bylaws); rito, supra at 332 (Appellate Division relied upon some zoning law precedent but eschewed reliance on decisions arising under G.L.c. 40C, the Historic Districts Act).

 ARC’s property encompasses nearly 40 acres. Whether the distance cited would be from Austin’s house to the proposed site of the turbine is unknown.

 A Joint Amended Pretrial Memorandum that is part of our record recited Austin’s historical ties to, and her enjoyment of, the “Black Flats Marsh” area of Dennis. It suggested that a “recent appraisal” (the June 24,2011 report of Frances M. Cross) valued her home at $720,000.00 and mentioned a “recent report” (otherwise undescribed and not found in the record) that “indicates” that the purposed turbine “could cause a depreciation of 20-25% in value” to the home. The trial judge did not note these unsubstantiated observations in his decision.
A review of the record suggests little beyond what the judge — conclusively — found. Austin lives at 27 Spadoni Way, Dennis. She has not placed that house on the market. She can see ARC buildings from her backyard. Somewhat tellingly, she was chosen as the “person aggrieved” to appeal the Dennis Committee’s decision from among 92 people in Dennis and Yarmouth, on whose “behalf’ she appealed, by dint other surname being first alphabetically. She considered a “person aggrieved” to be someone who “lives in that district.” At trial, she produced two consultants, a real estate appraiser and a real estate developer. The most pointed opinion from either witness was that wind turbines negatively affect real estate values; testimony as to any diminution of value of the Austin home was disallowed.

 The Appellate Division concluded that nothing in the Act permitted committee members acting as such to appeal rulings of the Commission, and that it would have been inappropriate for them to have done so. Allen, supra at 331 & n.5. See also Dennis Housing Corp. v. Zoning Bd. of Appeals of Dennis, 439 Mass. 71 (2003).

 Several sources describe the District as “the largest historic district in the nation.” See, e.g., Town of Dennis, Old Kings Regional Historic District Committee, at www.town.dennis.ma.us/Pages/DennisMa_Historic/01dKings (last viewed on May 30,2014); Town of Barnstable, Old Kings Highway Historic District Committee, at www.town.bamstable.ma.us/01dKingsHighway/ (last viewed on May 30,2014).